USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___07/02/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC CARATTINI,

                  Plaintiff,

-against-

CHRISTOPHER BEHUN,

                  Defendant.

No. 21 Civ. 9373 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Eric Carattini ("Plaintiff"), proceeding *pro se*, brings this action against Defendant Christopher Behun ("Defendant"). (*See* Second Amended Complaint, "SAC.," ECF No. 40.) As against Defendant, Plaintiff asserts claims for excessive force under the Fourth Amendment and deliberate indifference to medical needs under the Fifth Amendment. (*See id.* at 11–12.)

Defendant moves to dismiss Plaintiff's SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (the "Motion", ECF No. 63.) For the following reasons, the Motion is GRANTED in part and DENIED in part.

**BACKGROUND**

I.      Factual Background

The following facts are taken from the SAC and assumed to be true for the purposes of the Motion.

On April 19, 2021, following a brief car chase, Plaintiff was arrested, handcuffed, and transported by Defendant, a Drug Enforcement Administration ("DEA") Task Force Officer, to the Hawthorne State Police Barracks in the front passenger seat of an "unmarked and unequipped[] 'temporary' police vehicle." (SAC at 3–4.) The vehicle lacked light bars, seat belts, and a radio.

(*Id.* at 4.) Defendant placed Plaintiff in the front seat with no seat belt on and began to question him. (*Id.*) Defendant then elbowed and "backhand[ed]" Plaintiff repeatedly in the ribs, arm, shoulder, and face, as well as slammed on the brakes so that Plaintiff "pitched forward" onto the windshield, "cracking it and hurting his head." (*Id.*) Defendant subsequently "fail[ed] to get [Plaintiff] medical attention," *id.* at 12, though Plaintiff ultimately "was sent to local hospital" after attempting to enter a jail facility, *id.* at 6.

II.    Procedural History

On November 8, 2021, Plaintiff filed his Complaint. (ECF No. 1.) On August 25, 2022, Defendant served Plaintiff with a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF Nos. 24–26.) Plaintiff subsequently sought and was granted leave to file an amended complaint on two separate occasions. (*See* ECF Nos. 31, 36, 40–41.) On July 10, 2023, Plaintiff filed the SAC, which is now the operative complaint. (*See* ECF No. 40.)

On October 31, 2023, Defendant filed the instant Motion, as well as a memorandum of law ("Def.'s MoL", ECF No. 64) and reply brief (ECF No. 65) in support thereof. Plaintiff filed an opposition. (ECF No. 59.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not necessary for the purposes of surviving a motion to dismiss, however "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

Courts use a "two-pronged" approach to analyze a motion to dismiss. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citing *Iqbal*, 556 U.S. at 678–79). First, the Court accepts the factual allegations in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 678.  At this point, the court may identify and strip away pleadings which are legal conclusions "couched as [] factual allegations[s]," which are not entitled to the assumption of truth. *Id*. at 678–79.  Second, the court is tasked with determining whether the factual allegations "plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

The Second Circuit has ordered courts that "*pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, m403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). These submissions are not held to the rigidities of federal practice. *Massie v. Metropolitan Museum of Art*, 651 F. Supp.2d 88, 93 (S.D.N.Y. 2009). However, they will not survive a motion to dismiss unless "their pleadings contain factual allegations sufficient to 'raise a right to relief above a speculative level.'" *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 512 (S.D.N.Y. 2022) (quoting *Martinez v. Ravikumar*, 536 F.Supp.2d 369, 370 (S.D.N.Y. 2008)).

**DISCUSSION**

Liberally construed, Plaintiff's SAC asserts a Fourth Amendment excessive force claim and a Fifth Amendment deliberate indifference claim[1] pursuant to the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] (SAC at 11–12.) In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)). The *Bivens* Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant. *Bivens*, 403 U.S. at 389, 397, 91 S.Ct. 1999. Since then, the Supreme Court has recognized *Bivens* claims in only two other circumstances: (1) under the Fifth Amendment's Due Process Clause for gender discrimination against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S.

---

[1] The Court construes Plaintiff's deliberate indifference claim as arising under the Fifth Amendment, which applies to pretrial detainees, rather than the Eighth Amendment, which applies to those being "punished," because Plaintiff was, at most, a pretrial detainee at the time of the allegations in the SAC. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("Because as a pretrial detainee [plaintiff] was not being 'punished,' the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply. The district court correctly concluded that [plaintiff's] claims arise under the Due Process Clause of the Fifth Amendment instead.) In addition, the Fifth Amendment is implicated in deliberate indifference claims brought by pretrial detainees against federal actors. *See Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019).

[2] Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, but a Section 1983 cause of action applies to state, not federal officers. *Davis v. United States*, No. 03 Civ. 1800, 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004) ("[A]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers.") (internal quotation marks, citation, and alterations omitted). Here, Defendant is alleged to be a federal officer—specifically, a DEA agent. (*See* SAC at 3.) "Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under *Bivens*." *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 706 (S.D.N.Y. 2020) (quoting *Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009)); *see also Tavarez v. Reno*, 54 F.3d 109, 109–10 (2d Cir. 1995) (noting that the district court properly considered an action brought under § 1983 as an action under *Bivens*). Accordingly, the Court construes the SAC as raising *Biven* claims.

14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Following *Bivens, Davis*, and *Carlson*, the Supreme

Court has retreated from recognizing implied damages remedies under the Constitution, *see Ziglar*

*v. Abbasi*, 582 U.S. 120, 131–33 (2017), and "made clear that expanding the *Bivens* remedy is now

a disfavored judicial activity," *id.* at 135 (internal quotation marks and citation omitted).

In *Egbert v. Boule*, the Supreme Court crystallized a two-step inquiry for courts to

determine whether to imply a *Bivens* cause of action in a new context or against a new category of

defendants. 596 U.S. 482, 490–93 (2022) (citing *Abbasi*, 582 U.S. at 135–38). *First*, a court

considers "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different

from the three cases in which the [Supreme] Court has implied a damages action." *Id.* at 492. The

Supreme Court did not offer an "exhaustive list of differences that are meaningful enough to make

a given context a new one," but it did offer in *Abbasi* examples that "might prove instructive." 582

U.S. 120 at 139. The Court explained that

> [a] case might differ in a meaningful way because of the rank of the officers involved; the
> constitutional right at issue; the generality or specificity of the official action; the extent
> of judicial guidance as to how an officer should respond to the problem or emergency to
> be confronted; the statutory or other legal mandate under which the officer was operating;
> the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or
> the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40. If the case does not present a "new context," an implied cause of action for damages

is available. *See Egbert*, 596 U.S. 482 at 492. *Second*, if a "new context" is presented, a court

considers whether "'special factors' indicat[e] that the Judiciary is at least arguably less equipped

than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*

(quoting *Abbasi*, 582 U.S. at 136).

I.      Fourth Amendment Excessive Force Claim

Plaintiff alleges Defendant used excessive force on him when he elbowed and

"backhand[ed]" Plaintiff repeatedly in the ribs, arm, shoulder, and face, as well as slammed on the

brakes so that Plaintiff would hit his head on the windshield. (SAC at 4.) In response, Defendant argues that, by nature of the constitutional rights at issue and other factual distinctions, recognizing such a claim would extend *Bivens* to a new context. (Def.'s MoL at 6-8.)

A.     New Context Analysis

Courts in this Circuit—and indeed, in this District—are split as to whether excessive force claims present a new context under *Bivens*, and the Second Circuit has yet to weigh in on the question.[3] Some courts—like those in *Martinez*, 2019 WL 6895436 and *Rivera v. Samilo*, 370 F. Supp. 3d 362 (E.D.N.Y. 2019)—have found that the right at issue in *Bivens* was primarily a privacy right, not a right to be free of excessive force. As such, they have found that excessive force claims present a new *Bivens* context. Other courts, however, have held that *Bivens* also involved a claim "that unreasonable force was employed in making the arrest," and that the plaintiff was entitled to recover for "*any* injuries…suffered as a result of the agents' violation of the [Fourth] Amendment." *Bivens*, 403 U.S. at 389, 397 (emphasis added); *see also Walker,* No. 18CIV4090VECSLC, 2020 WL 7685100, at *16 (S.D.N.Y. Apr. 24, 2020), *report and recommendation adopted sub nom. Walker v. Kim*, No. 18-CV-4090 (VEC), 2020 WL 7079421 (S.D.N.Y. Dec. 3, 2020) (holding, without deciding, that Fourth Amendment unconstitutional arrest claims against federal defendants

---

[3] The Second Circuit recently issued two non-precedential, summary orders affirming the district courts' findings that the plaintiffs' Fourth Amendment *Bivens* claims presented a "new context." *See Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2–3 (2d Cir. Jan. 2, 2024) (affirming dismissal of *Bivens* claims alleging unlawful seizure, based on "new context" presented by lawsuit against, among others, "officers and agents of the [Bureau of Prisons] and the [Probation and Pretrial Services Office]"); *Lewis v. Bartosh*, No. 22-3060-PR, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023) (affirming dismissal of *Bivens* claim alleging excessive force, based on "new context" presented by suit against Deputy U.S. Marshals). "While not explaining their application of the two-part test from *Egbert* with precision, the panels in *Cohen* and *Lewis* both relied on the different agencies and federal officers involved, as well as the existence of an alternative remedy, in declining to infer a *Bivens* cause of action in those cases." *See Gray v. Gomez*, No. 19CV4746PKCLB, 2024 WL 1345656, at *5 (E.D.N.Y. Mar. 30, 2024); *see also Cohen*, 2024 WL 20558, at *2–3; *Lewis*, 2023 WL 8613873, at *1 (explaining that, " '[i]f a claim arises in a new context'—such as if it involves a 'a new category of defendants'—or if there is an 'alternative remedial structure,' a *Bivens* remedy is generally 'unavailable' " (quoting *Egbert*, 596 U.S. at 492–93, 142 S.Ct. 1793)). By contrast, here, the Plaintiff's claims proceed against the same agency and type of officer originally involved in *Bivens*. (*See* SAC at 3; *Bivens*, 403 U.S. at 389.)

in New York City "arguably fall within one of the recognized *Bivens* categories"); *Bueno Diaz,* 2020 WL 1082482, at *2–5 (finding that claim based on unconstitutional arrest in New York City was a "run-of-the-mill challenge to a standard law enforcement operation" that was not "a context meaningfully different" from *Bivens*); *Lehal v. Cent. Falls Det. Facility Corp.*, 13 Civ. 3923 (DF), 2019 WL 1447261, at *10–12 (S.D.N.Y. Mar. 15, 2019). This Court joins the latter group in holding that excessive force claims under *Bivens* survive *Abbasi*, and therefore proceeds to analyzing whether the case at bar presents a new context under *Bivens*.

    *First*, both *Bivens* and this case concern the same type of federal officers: narcotics officers. (*See* SAC at 3; *Bivens*, 403 U.S. at 389.) *Second*, the "legal mandate under which the officer was operating" is not meaningfully different, *Abbasi*, 582 U.S. at 140, "because the officers in both cases carried out the same category of 'official action': an arrest of someone suspected of a narcotics offense," *see Bueno Diaz*, 442 F. Supp. 3d at 708. (*See* SAC at 3; *Bivens*, 403 U.S. at 389.) Defendant argues that the fact that Plaintiff was arrested pursuant to a warrant makes this case meaningfully different from *Bivens*, because in *Bivens*, "the officers lacked both a warrant and probable cause to arrest the plaintiff" in his home, whereas "[h]ere, …Plaintiff 'makes absolutely no allegations that he was ultimately arrested without either a warrant or probable cause.'" (Def.'s MoL at 7 (quoting *Sosa v. Bustos,* No. 17 CIV. 417 (ER), 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020).) But Defendant's argument directly contradicts *Bivens*. The holding in *Bivens* entitled the arrestee to recover for "*any* injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment," *Bivens*, 403 U.S. at 397 (emphasis added), and explicitly recognized that, among other injuries, the arrestee had alleged "that unreasonable force was employed in making the arrest," *id.* at 389. *Bivens* is not, therefore, meaningfully different on this basis. *See Bueno Diaz*, 442 F. Supp. 3d at 708 (holding that arrest pursuant to a warrant did not

present a new *Bivens* context); *Lehal*, 2019 WL 1447261, at *12 ("the existence of a warrant…should not be characterized as 'potential special factors that previous *Bivens* cases did not consider.'") (quoting *Abbasi*, 582 U.S. at 140). Rather, the fact that Plaintiff's Fourth Amendment claim asserts a constitutional right implicated in *Bivens* itself is a factor that, under *Abassi*, weighs heavily in *favor* of finding that Plaintiff's claim arises in the *Bivens* context, rather than in a "new" context.

Defendant contends that because the question of whether a particular use of force was excessive is fact-dependent, "judicial precedents provide a less meaningful guide for official conduct," Def.'s MoL at 7 (quoting *Abbasi*, 582 U.S. at 148), and therefore "this factor weigh[s] in favor of finding a new context with respect to a Fourth Amendment excessive force claim," *id.* at 8. The Court disagrees. "[A]t the time of Plaintiff's arrest, there existed substantial 'judicial guidance' as to the unconstitutionality of employing excessive force in the course of an arrest." *See Bueno Diaz*, 442 F. Supp. 3d at 707–09 (quoting *Abbasi*, 582 U.S. at 140); *see, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395–97 (1989) (setting forth judicial guidance on the prohibition of excessive force by an arresting officer). Striking an arrestee repeatedly in the ribs, arm, shoulder, and face, as well as causing him to hit his head on a car windshield is hardly a close call in terms of evaluating official conduct. *See Bueno Diaz*, 442 F. Supp. 3d at 713 ("Here, [d]efendant's actions constitute excessive force. Spitting is not reasonably related to any goals of effectuating a lawful arrest.") Finally, Defendant does not suggest, nor is it apparent to the Court, that recognizing a *Bivens* remedy in this case would risk a "disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 582 U.S. 120 at 140.

In sum, there is no meaningful difference between the context of *Bivens* and that of this case. "While this case does not align with *Bivens* on all fours, the cases are closely analogous to

the extent they involve claims of federal agents using excessive force to effect arrests." *See Lehal*, 2019 WL 1447261, at *12. "[T]he facts here present a 'garden variety excessive force case,'" *Bueno Diaz*, 442 F. Supp. 3d at 709 (citation omitted), in "a context [not] meaningfully different from *Bivens*," *id.* at 708 (upholding Fourth Amendment excessive force claim under *Bivens* against a DEA agent who beat plaintiff after arresting him). Accordingly, the Court finds that Plaintiff's *Bivens* claim for excessive force does not arise in a "new context."

B.     Special Factors Analysis

In the alternative, the Court holds that, even if this case were considered to present a new *Bivens* context, special factors would not counsel against extending a *Bivens* remedy. The "special factors" analysis asks "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. In answering this question, a court may look to whether Congress has provided an "alternative remedial structure," the existence of which "itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi,* 582 U.S. at 137 (internal quotation marks, citation, and brackets omitted). Defendant argues that the existence of an alternative remedial scheme—the Federal Tort Claims Act ("FTCA")—"provides a reason to think Congress might be better equipped to create a damages remedy and, as such, alone 'foreclose[s] a *Bivens* action.'" (Def.'s MoL at 8 (quoting *Egbert*, 142 S. Ct. at 1806).) Defendant contends that Plaintiff's ability to obtain monetary relief under the FTCA, 28 U.S.C. §§ 2674, 2680(h), precludes him from bringing a *Bivens* action. *Id*. at 8–10. The Court disagrees, and concludes that Defendant overreads the Supreme Court's guidance regarding alternative remedies.

The Supreme Court has stated that it is "crystal clear" that "Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 20, 100 S.Ct. 1468. In

particular, "the FTCA facilitates only liability in tort against the United States itself, whereas the

*Bivens* remedy vindicates violations of constitutional rights by federal employees." *See Powell v.*

*United States*, No. 19-cv-11351, 2020 WL 5126392, at \*10 (S.D.N.Y. Aug. 31, 2020) (internal

citation omitted). It has been repeatedly emphasized that an FTCA claim is simply not "a substitute

for a *Bivens* action," *Bush v. Lucas*, 462 U.S. 367, 378 (1983); *see also Wilkie v. Robbins*, 551

U.S. 537, 553 (2007) (noting that the "FTCA and *Bivens* remedies were 'parallel, complementary

causes of action' and that the availability of the former did not preempt the latter" (quoting

*Carlson*, 446 U.S. at 20, 100 S.Ct. 1468)). Neither the Supreme Court nor the Second Circuit has

explicitly "decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes

the *Bivens* remedy." *Scott v. Quay*, No. 19-cv-1075, 2020 WL 8611292, at \*8 (E.D.N.Y. Nov. 16,

2020). "[A]bsent clear guidance, this Court joins others unwilling to determine that the FTCA

alone is a sufficient alternate remedy." *See Mirvis v. Quay*, No. 19CV2573LDHVMS, 2023 WL

5671935, at \*10 (E.D.N.Y. Sept. 1, 2023); *see also Powell*, 2020 WL 5126392, at \*10 ("The

Supreme Court has not been bashful in signaling its skepticism of the *Bivens* remedy—if the Court

intended to overrule *Carlson*, I am quite sure it would simply do so."); *Bueno Diaz*, 442 F. Supp.

3d at 711 ("The Supreme Court's prior rulings in [*Carlson*] and [*Robbins*], remain good law ...

[t]he Court will follow that precedent.").

     "Certainly, the Court is mindful of the Supreme Court's recent decision in *Egbert v. Boule*,

which has been interpreted to significantly constrict the pathway for redress under *Bivens*." *Mirvis*,

2023 WL 5671935, at \*6. However, "although [the *Egbert*] opinion will make it harder for

plaintiffs to bring a successful *Bivens* claim....the lower courts should not read it to render *Bivens*

a dead letter." *Egbert*, 142 S. Ct. at 1823 (Sotomayor, J., concurring in part and dissenting in part).

Though in recent Supreme Court decisions, "the ground has shifted under *Bivens*, shaking its

10

doctrinal foundations…shaky or no, *Bivens* remains the law, and we are not free to ignore it." *See*

*Powell*, 2020 WL 5126392, at \*10 (quoting *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013)).

Accordingly, the Court is unwilling to restrict the availability to Plaintiff of a *Bivens*

remedy based on the existence of the FTCA alone.

> C.    Sufficiency of Pleading

Having found that a *Bivens* remedy is available for the Fourth Amendment violation

Plaintiff alleges, the Court also concludes that Plaintiff has adequately stated a claim of excessive

force against Defendant. Although "not every push or shove" violates the Fourth Amendment,

*Graham,* 490 U.S. at 396, 109 S.Ct. 1865, Plaintiff claims that Defendant elbowed him repeatedly

in the ribs, arm, shoulder, and face, as well as slammed on the brakes so that Plaintiff would hit

his head on the windshield. (SAC at 4.) "These actions, assumed true for the purposes of deciding

the motion to dismiss, exceed reasonable force." *See Bueno Diaz*, 442 F. Supp. 3d at 713; *see also*

*O'Hara v. City of New York*, 570 F. App'x. 21, 23–24 (2d Cir. 2014) (concluding that, "no

reasonable officer ... could have thought that the law authorized him repeatedly to punch an

unarmed, non-menacing 17-year-old in effecting an arrest"); *Konovalchuk v. Cerminaro*, No. 11

Civ. 1344, 2014 WL 272428, at \*17 (N.D.N.Y. Jan. 24, 2014) ("Crediting the *pro se* plaintiff's

account of the events, as required by the governing law, the alleged kicking, punching, and

stomping carried out by [the officers] would be objectively unreasonable and disproportional to

the circumstances confronting those officers."). As a result, the Court denies Defendant's motion

to dismiss Plaintiff's Fourth Amendment excessive force claim.

> II.    Fifth Amendment Deliberate Indifference Claim

Plaintiff alleges that Defendant "fail[ed] to get [him] medical attention after sadistically

and maliciously assaulting [him]" during their car ride following Plaintiff's arrest. (SAC at 12.) In

response, Defendant argues that, by nature of Plaintiff's pre-trial status and other factual distinctions, recognizing such a claim would extend *Bivens* to a new context. (Def.'s MoL at 11-14.)

### A.     New Context Analysis

In *Carlson v. Greene*, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment gave an inmate a damages remedy for failure to provide adequate medical treatment. *See* 446 U.S. at 17–18. Plaintiff's status as a pretrial detainee, however, requires his claims be considered under the Fifth Amendment, as the Fifth, not Eighth, Amendment protects federal pretrial detainees from deliberate indifference to their serious medical needs. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017). The Supreme Court has not explicitly recognized a *Bivens* remedy for deliberate indifference to serious medical needs under the Fifth Amendment. Therefore, as Defendant's argument goes, Plaintiff's claim arises under a new *Bivens* context. (Def.'s MoL at 11-12*.*)

"However, contrary to Defendant['s] contention, that Plaintiff's claim[] arise[s] under a different constitutional provision is not necessarily dispositive as to whether Plaintiff's claim[] implicate[s] a new *Bivens* context." *See Mirvis*, 2023 WL 5671935, at *4 (concluding that the difference between the Fifth and Eighth Amendments did not suffice to create a new *Bivens* context with respect to pretrial detainee's deliberate indifference claims). In this case, Plaintiff seeks to hold a federal officer liable for damages he sustained as a result of the officer's indifference to his medical claims as a pretrial detainee. If the claim proceeds, in assessing its sufficiency, the Court would employ the same analysis that it would have had Plaintiff's claim arose under the Eighth Amendment. Indeed, the Second Circuit has noted that "[w]e have often applied the Eighth

Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment ... [w]e see no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment." *Cuoco*, 222 F.3d at 106. *Compare Cannenier v. Skipper-Scott*, 18-cv-2383, 2019 WL 764795, at *4 (S.D.N.Y. Feb. 20, 2019) (considering a deliberate indifference to serious medical need claim under the Eighth Amendment), *with Laurent v. Borecky*, No. 17-cv-3300, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018) (considering a deliberate indifference claim brought under the Fifth Amendment and finding that while "this case…presents a different constitutional right at issue…it bears an extremely strong resemblance to [one of] the three *Bivens* claims the [Supreme] Court has approved in the past[ ]") (alternations in original) (internal quotation marks omitted). Plaintiff's medical indifference claim is indistinguishable from *Carlson* in form aside from the Plaintiff's pretrial status, which forces him to pursue his claim under the Fifth Amendment as opposed to the Eighth Amendment. *Cf. Ojo v. United States*, 364 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (finding Fifth Amendment equal protection claim presented new context because it was "distinct from the deliberate indifference claim recognized in *Carlson*.").

Accordingly, the fact that Plaintiff's *Bivens* claim for deliberate indifference to serious medical needs is brought under the Fifth Amendment as opposed to the Eighth Amendment claim recognized in *Carlson* does not mean that the claim arises in a new context. In so finding, the Court joins several other district courts within this Circuit to reach a similar conclusion. *See, e.g.*, *Mirvis*, 2023 WL 5671935, at *4; *Mendoza v. Edge*, 615 F. Supp. 3d 163, 171 (E.D.N.Y. 2022) (finding that Fifth Amendment deliberate indifference claim bore "an 'extremely strong resemblance' to the Eighth Amendment deliberate indifference claim at issue in *Carlson*.") (citation omitted); *Geritano v. AUSA Office for E.D.N.Y.*, No. 20-cv-0781, 2020 WL 2192559, at *4 (S.D.N.Y. May

5, 2020) ("Courts in this district have held that a federal pretrial detainee may bring a medical claim under the Fifth Amendment because such a claim is the same context as an Eighth Amendment claim already recognized in *Carlson*."); *Torres v. Licon Vitale*, No. 20-CV-3787 (LLS), 2020 WL 3872151, at \*3 (S.D.N.Y. July 9, 2020) ("Federal pretrial detainees may bring a Fifth Amendment claim for failure to provide medical treatment as a *Bivens* action because such a claim bears a strong resemblance to the claim in *Carlson*.").

The Court agrees with Defendant, however, that other distinctions make it such that Plaintiff's deliberate indifference claim arises in a new context. *First*, unlike Plaintiff's Fourth Amendment claim, Plaintiff's Fifth Amendment claim is brought against a "new category of defendants" as compared to *Carlson*. *See Abbasi*, 582 U.S. at 135 (observing that the Supreme Court has "consistently refused to extend *Bivens* to any . . . new category of defendants" (citation omitted)). While *Carlson* involved allegations of deliberate indifference by prison officials, *see Carlson*, 446 U.S. at 16, this case involves allegations of deliberate indifference by an alleged "investigator for the New York State Police" "working in conjunction with the [DEA]," (SAC at 1, 3); *see Martinez*, 2019 WL 6895436, at \*7 (finding different "type of officers involved" to be a meaningful difference).

*Second*, the severity of Plaintiff's alleged injury differs significantly from that in *Carlson*., Liberally construed, the SAC alleges unspecified injuries to Plaintiff's ribs, arm, shoulder, face, and head from the Defendant's alleged elbowing, backhanding, and stopping his vehicle short. (*See* SAC at 4.) By contrast, *Carlson* involved allegations of grossly inadequate medical care provided to an inmate with a severe and chronic asthma condition that ultimately resulted in the inmate's death. *See Carlson*, 446 U.S. at 16 & n.1. "Courts have routinely found variances in circumstances and severity render deliberate indifference claims different from *Carlson* and thus

arise in a 'new context.'" *Bettis v. Grijalva*, No. 21 CIV. 7505 (GWG), 2023 WL 4141869, at *6

(S.D.N.Y. June 23, 2023) (collecting cases); *see also Caraballo v. Pliler*, No. 21-CV-10476

(PMH), 2023 WL 3467185, at *8 (S.D.N.Y. May 15, 2023) ("Because the [d]efendants' alleged

deliberate indifference to the [p]laintiff's COVID-19 symptoms did not result in any serious injury

or harm, the [p]laintiff's allegations would present a new *Bivens* context that is much different

from the life-threatening asthma attack that the plaintiff suffered in *Carlson*.") (citations and

quotation marks omitted). For example, in *Rivera v. Fed. Bureau of Prisons*, the plaintiff brought

a *Bivens* claim alleging "deliberate indifference to the medical needs of a person in federal

custody[.]" No. 17-CV-05103 (GBD/DF), 2018 WL 11312146, at *8 (S.D.N.Y. Dec. 14, 2018),

*report and recommendation adopted*, 368 F. Supp. 3d 741 (S.D.N.Y. 2019). The Court recognized

the plaintiff's claim as similar to *Carlson*, but determined:

> there [was] a key distinction between the two [cases]: unlike in *Carlson*, where medical
> personnel failed to provide any medical treatment for a life-threatening condition, [the
> p]laintiff's *Bivens* claims centers on whether he was constitutionally entitled to a certain
> dosage of a drug as part of a drug treatment program, in which he admits he was placed.

Defendant's alleged deliberate indifference – namely, his "failing to get [P]laintiff medical

attention (SAC at 12) – in this case did not result in any serious injury or harm to Plaintiff. Because

Plaintiff has failed to allege sufficiently similar serious medical needs as the plaintiff in *Carlson*,

the Court finds that his Fifth Amendment claim presents a new *Bivens* context. *Cf. Mendoza*, 615

F. Supp. 3d at 171 (concluding that the plaintiff's "claim that the defendants were deliberately

indifferent to his health bears an 'extremely strong resemblance' to the Eighth Amendment

deliberate indifference claim at issue in *Carlson*," given that the plaintiff was denied medical care

after he "suffered lacerations and bruises to his face, head, chest, back, wrists and legs ... [and t]wo

of his teeth, his jaw and his nose were broken, and he urinated blood for two or three days")

(quoting *Laurent*, 2018 WL 2973386, at \*5). The non-life-threatening nature of Plaintiff's injuries presents a context different from *Carlson*.

### B.     Special Factors Analysis

Having found that his Fifth Amendment claim arises in a new context, the Court must now determine whether there are special factors counselling hesitation against providing Plaintiff with a *Bivens* remedy. As with Plaintiff's Fourth Amendment claim, Defendant contends that "the existence of an alternative remedial scheme—the FTCA—provides a reason to think Congress might be better equipped to create a damages remedy for Plaintiff's Fifth Amendment deliberate indifference claim and, as such, alone 'foreclose[s] a *Bivens* action.'" (Def.'s MoL at 13-14 (quoting *Egbert*, 142 S. Ct. at 1806).) As the Court explained earlier, it is unwilling to determine that the FTCA alone is a sufficient alternate remedy. *See Powell*, 2020 WL 5126392, at \*10.

The Court does, however, find that, the existence of the Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e, counsels against recognizing Plaintiff's new *Bivens* claim for deliberate indifference.[4] As the Supreme Court has observed, after *Carlson*, "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court" and evidenced "that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs."

---

[4] The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1915(h). "'Read broadly, this language could arguably be interpreted to include' all individuals 'who are currently detained and who have in the past been accused of, convicted of, or sentenced for a criminal offense.'" *Jones v. Cuomo*, 2 F.4th 22, 25–26 (2d Cir. 2021) (quoting *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000)). In other words, "to fall within the definition of 'prisoner,' the individual in question must be *currently detained as a result of* an accusation, conviction, or sentence for a criminal offense." *Id.* (quoting *Gibson v. City Municipality of New York*, 692 F.3d 198, 202 (2d Cir. 2012)) (emphasis in original). At the time of his alleged denial of medical treatment by Defendant, Plaintiff was detained and in the custody of a Defendant as a result of being accused of a crime. As a result, the PLRA is applicable to his claims. *See Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 126 (S.D.N.Y. 2023) (declining to extend *Bivens* to give pretrial detainee remedy for injuries he sustained during detention in federal custody in part because of the existence of the PLRA).

*Id.* (citing 42 U.S.C. § 1997e). That the PLRA "does not provide for a standalone damages remedy against federal jailers" constitutes "legislative action suggesting that Congress does not want a damages remedy," and is thus a "factor counseling hesitation" against recognizing a new *Bivens* claim. *Bravo*, 684 F. Supp. 3d at 125–26 (finding that absence of damages remedy against federal prison officials in PLRA was a factor counseling against recognizing a new *Bivens* claim for inadequate medical treatment) (quoting *Abbasi*, 582 U.S. at 148–49). Moreover, the PLRA's scope squarely covers the complaints Plaintiff raises here: "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," including deliberate indifference to medical needs. *See Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA's requirements counsels against expansion of the *Bivens* remedy in this case. Accordingly, Plaintiff's Fifth Amendment deliberate indifference claim is dismissed.

"Absent a Supreme Court decision creating a new *Bivens* remedy on all fours with Plaintiff's alleged [Fifth Amendment] *Bivens* Claim[], Plaintiff's *Bivens* Claim[] cannot survive a motion to dismiss." *See Negron v. United States*, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *10 (S.D.N.Y. Sept. 21, 2020). There is no Supreme Court decision that has created a new *Bivens* remedy which would allow Plaintiff's claim to survive a motion to dismiss. As a result, the Court dismisses his Fifth Amendment claim with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.

Plaintiff's Fifth Amendment claim is dismissed with prejudice. Defendant is directed to

answer Plaintiff's Second Amended Complaint by July 23, 2024. The parties are then directed to

complete and file a Case Management Plan and Scheduling Order (blank form attached) by August

6, 2024.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 63. The Clerk of

Court is also kindly directed to mail a copy of this Opinion and Order to *pro so* Plaintiff at the

address listed on ECF and show service on the docket.

Dated:   July 2, 2024                                        SO ORDERED:
         White Plains, New York

_____
                                                NELSON S. ROMÁN
                                             United States District Judge

UNITED STATES DISTRICT COURT                                          Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x


                                                        **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),             **AND SCHEDULING ORDER**
        - against -


                              Defendant(s).        _____ CV _____ (NSR)


--------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

    1.    All parties [consent] [do not consent] to conducting all further proceedings before
          a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
          The parties are free to withhold consent without adverse substantive consequences.
          (If all parties consent, the remaining paragraphs of this form need not be
          completed.)

    2.    This case [is] [is not] to be tried to a jury.

    3.    Joinder of additional parties must be accomplished by _____.

    4.    Amended pleadings may be filed until _____. Any party
          seeking to amend its pleadings after that date must seek leave of court via motion.

    5.    Interrogatories shall be served no later than _____, and responses
          thereto shall be served within thirty (30) days thereafter.  The provisions of Local
          Civil Rule 33.3 [shall] [shall not] apply to this case.

    6.    First request for production of documents, if any, shall be served no later than
          _____.

    7.    Non-expert depositions shall be completed by _____.

          a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

          b.    Depositions shall proceed concurrently.

          c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:

White Plains, New York

_____
Nelson S. Román, U.S. District Judge